UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                                                  Chapter 7

BMT DESIGNERS & PLANNERS, INC.,                                        Case No. 22-10123 (MG)
fdba BMT D&P, fdba BMT fdba BMT DAS US,

      Debtor.
-----------------------------------------------------------------x

**MOTION FOR THE ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a), 541, 542 AND 721, AUTHORIZING THE CHAPTER 7 TRUSTEE TO OPERATE THE DEBTOR'S BUSINESS AND PAY CERTAIN OPERATING EXPENSES OF THE ESTATE, TO DIRECT THE TURNOVER OF PROPERTY OF THE DEBTOR'S <u>ESTATE AND FRANTING RELATED RELIEF</u>**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

  Salvatore LaMonica, solely in his capacity as interim Chapter 7 Trustee ("<u>Trustee</u>") of BMT Designers & Planners, Inc., fdba BMT D&P, fdba BMT, fdba BMT DAS US ("<u>Debtor</u>") estate ("<u>Estate</u>"), by his proposed counsel, LaMonica Herbst & Maniscalco, LLP ("<u>LHM</u>")[1], submits this motion ("<u>Motion</u>") seeking the entry of an Order, pursuant to 11 U.S.C. §§ 105(a), 541, 542 and 721 ("<u>Bankruptcy Code</u>"), authorizing the Trustee to operate the Debtor's business and pay certain expenses on an interim basis from funds in the Estate to wind down the Debtor's operations, collect the substantial accounts receivable, preserve the Debtor's books and records and other assets and direct the turnover of property of the Estate as set forth herein, *nunc pro tunc* to February 2, 2022 through and including May 2, 2022, without prejudice to seek to further extend such time, and for related relief, and respectfully represents as follows:

---

[1] LHM's application is currently under review by the Office of the United States Trustee.

1

**PRELIMINARY STATEMENT**

1. The relief sought in this Motion is a critical step in the Trustee gaining control over the administration of the Estate, as well as the marshalling and liquidating the Debtor's assets in an efficient and effective manner.

2. Prior to the bankruptcy filing, the Debtor operated as a maritime-oriented high-end design house and technical consulting firm and provided engineering and consulting services under various service contracts, many of which were with the branches of the United States Military (*i.e.* United States Army, Navy and Coast Guard). Indeed, much of the Debtor's business involved commercial and military vessels design under existing government contracts, which also required the engagement of multiple subcontractors by the Debtor under various subcontractor agreements.

3. The Trustee has been advised that there is approximately $4 million in outstanding accounts receivable owed to the Estate on account of these contracts. To that end, the Trustee seeks to hire former officers and employees of the Debtor to assist with, not only the collection of these outstanding accounts receivable, but also to advise the Trustee on the status of the existing contracts with the government and the related subcontracts. In this regard, the Trustee has been contacted by multiple contractors and subcontractors seeking to know the disposition of the Debtor's existing contracts. If the Court grants the relief requested herein, the Trustee, in consultation with the Debtor's former officers, will properly analyze the current disposition of these contracts and determine which may have value and which ones can be abandoned or disposed of in some other appropriate manner.

4. Moreover, as explained in further detail below, the bulk of the Debtor's books and records are stored electronically and hosted on various platforms, which are accessed only through the purchase of exclusive license agreements. The Trustee seeks to extend, for an interim period,

one such licensing agreement with Deltek Inc. ("Deltek"), which currently hosts all of the Debtor's accounting records needed to generate invoices for the collection of the outstanding receivables. The current contract is set to expire in March 2022, which will then terminate the Debtor's access to the platform effectively losing all of the Debtor's information. In addition, the Trustee is in the process of transitioning all of the Debtor's other electronic records that were located on its servers (*i.e.* employee and financial records, information about government contracts and electronic mail) to a third party host, Cyber Health, that will maintain this critical information throughout the administration of the Estate as the Trustee deems necessary.

5. Lastly, but equally as important, each of the Debtor's 180 employees, the majority of whom worked remotely, have a laptop in their possession. The laptops are property of the Debtor's estate pursuant to Bankruptcy Code sections 541 and 542. The Trustee has been advised that most of these laptops contain "Controlled Unclassified Information" ("CUI"). This type of information is regulated and restricted by the Department of Defense, which enforces the control over the dissemination and destruction of such CUI.

6. Therefore, to ensure that none of the CUI is improperly disseminated, the Trustee seeks the immediate turnover of any and all of the Debtor's laptops in the possession, custody or control of any former employee or any other third party. In connection with this process the Trustee may incur a cost to take possession of the laptops, but there are sufficient and available funds in the Estate to cover these projected costs.

7. Based on the foregoing, and for the reasons set forth herein, the Trustee seeks the entry of an Order, pursuant to Bankruptcy Code sections 105, 541, 542 and 721: i) authorizing the Trustee to operate the Debtor's business to wind down operations through the employment of the Debtor's former employees as independent contractors of the Estate; ii) allowing the Trustee to

keep the Debtor's Operating Account (defined herein) open for an interim period of time with the Trustee maintaining control over the account; iii) authorizing the Trustee to enter into agreements to secure and preserve the Debtor's electronic books and record, and to pay the related expenses; and iv) directing the immediate turnover of any and all the Debtor's laptops in the possession, custody or control of any former employee or any other third party.

## JURISDICTION AND VENUE

8.      The United States Bankruptcy Court, Southern District of New York ("Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.      Procedural Background**

10.     On February 1, 2022 ("Filing Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code in the Court.

11.     Salvatore LaMonica was appointed as the interim Chapter 7 Trustee of the Debtor's estate, and is currently acting in that capacity.

12.     The Debtor's meeting of creditors, pursuant to Bankruptcy Code section 341, is scheduled for February 24, 2022.

13.     The Debtor's headquarters are located at 2900 South Quincy Street, Suite 210, Arlington, Virginia 22206.

14.     The Debtor ceased operations on January 31, 2022.

4

**B.      The Collection of Accounts Receivable and the Debtor's Existing Contracts**

15.     Since his appointment, the Trustee, and his proposed professionals, have been in communication with the former officers of the Debtor's company to ensure a smooth and efficient winddown of the Debtor's operations. To that end, the Trustee has been advised that there is possibly $4 million of outstanding accounts receivable owed to the Estate. In addition, there is about $1 million of work in progress from January, 2022, all of which can be generated into accounts receivable for the benefit of the Estate and its creditors.

16.     Significantly, there is no secured creditor asserting a lien in and to any of the Debtor's assets to the Trustee's knowledge and understanding. There is, however, approximately $10 million of general unsecured debt according to the Debtor's petition and schedules.

17.     In a separate application, the Trustee seeks to retain LHM as his general counsel to assist the Trustee in his efforts to collect the accounts receivable. The Trustee, in his business judgment, has determined that the most efficient way to collect these outstanding accounts receivable is to hire former officers and employees of the Debtor, who have personal knowledge about these accounts receivable and the services rendered by the Debtor before the bankruptcy filing. As set forth above, the Debtor has multiple service contracts with branches of the U.S. Military that were in existence at the time of the filing. The Trustee, in consultation with the Debtor's former employees, needs to analyze each of them to determine the most effective and prudent manner to dispose of these contracts.

18.     Therefore, the Trustee, at this time, seeks to retain, as independent contractors, on an hourly basis, the Debtor's President, Chief Financial Officer, Vice President of Contracts, and bookkeeper. The Trustee has determined that each of these individuals can contribute a unique and important role in assisting the Trustee with marshalling and liquidating the Debtor's assets, as well

5

as assisting in the wind down the Debtor's operations in the most efficient way possible. Each of the former employees have agreed to perform services on behalf of the Estate subject to Court approval.

19. Accordingly, the Trustee respectfully requests that Court authorize the Trustee to operate the Debtor's business to wind down its operation through the employment of these former officers and employees as independent contractors of the Estate and allow the Trustee to hire any other former employee as the Trustee, in his business judgment, deems necessary during the wind down of operations.

### C. The Debtor's Operating Account at Truist Bank

20. Prior to the Filing Date, the Debtor maintained its primary operating account ("Operating Account") at Truist Bank ("Truist"). Most, if not all, of the Debtor's accounts receivable were paid directly into the Debtor's Operating Account at Truist either by ACH payments or direct wire transfers.

21. As of the Filing Date, there was approximately $350,000 in the Debtor's Operating Account. Since the Filing Date, LH&M has assisted the Trustee in the collection of an additional $400,000 that has now been paid into the Debtor's Operating Account. Upon his appointment, the Trustee directed those funds to be swept into the Estate's account. As of the date of this Motion, the Trustee is currently holding $855,000 in the Estate account.

22. Moreover, the Trustee has been advised by the Debtor's Chief Financial Officer that there are likely additional pending payments scheduled to be paid into the Debtor's Operating Account via wire transfer or ACH payments from existing contracts.

23. As of the date of this Motion, the Trustee is in the process of becoming a signatory on the Debtor's Operating Account at Truist with the ability to monitor the account and sweep any

funds into the Estate account. The Trustee hopes to have this transition complete before the hearing on this Motion.

24.     Accordingly, the Trustee respectfully requests that the Court allow the Trustee to keep the Debtor's Operating Account at Truist open for an interim period of time with the Trustee maintaining control over the account.

**D.     The Preservation of the Debtor's Books and Records**

25.     As the Court is aware, the Trustee has an obligation to preserve and maintain all of the Debtor's books and records throughout the administration of the Estate. As with most of the industries today, the majority of the Debtor's books and records, including all of its accounting information needed for the collection of the accounts receivable, is hosted on a web-based platform—Deltek.

26.     Prior to bankruptcy filing, the Debtor purchased 180 licenses annually from Deltek that allowed the Debtor to utilize and store all of its accounting records and generate all of its billing through this platform. The annual cost for these licenses was approximately $110,000, and the current existing contract is set to expire on March 31, 2022. It is important to note that once the licenses expire, the Trustee will be unable to access any of the Debtor's accounting information on the Deltek platform. Also noteworthy, the Trustee cannot remove this financial information from such platform because of Deltek's exclusive licensing rights.

27.     The Trustee was able to negotiate an extension of the existing contract with Deltek at a reduced rate to ensure the financial records are preserved. Specifically, Deltek has agreed to issue 5 new licenses to the Trustee with the same pre-petition services for a period of six-months for a flat rate of $15,000 (with the ability to further extend the contract) subject to Court approval. The Trustee submits that it is imperative to preserve access to these records, not only to collect the

7

outstanding accounts receivable, but also to perform his investigation in to the Debtor's pre-petition activities and its financials.

28. Similarly, the Debtor's Microsoft Office 365 system was hosted through other web-based services and the shared hard drive was backed up and maintained in the Debtor's cloud. The Trustee has been notified by these web-based services that they will terminate at the end of this month.

29. The Trustee has begun the process of migrating all of the Debtor's books and records (*i.e.* employee and financial records, the existing contracts and electronic mail) on the shared drive of the server, as well as those stores on the Microsoft Office 365 system to a third-party host-Cyber Health.[2] Cyber Health has agreed to transition all of the Debtor's electronic information over to this system for a flat rate of $5,000. In addition, the Trustee will pay a monthly fee to maintain the Debtor's electronic records at Cyber Health on a going forward basis.

30. Once again, the Trustee submits that it is imperative to preserve access to these records, to perform his investigation in and to the Debtor's pre-petition activities and its financials.

31. Based upon the foregoing, the Trustee respectfully requests that the Court authorize the Trustee to i) enter into an agreement with Deltek and pay them a flat rate of $15,000 for five licenses to access their platform for a six-month period (without prejudice to extend the contract further); and ii) the enter into an agreement with Cyber Health and pay them a flat rate of $5,000 to transition over the Debtor's books and records and to pay the negotiated monthly fee.

E. **Turnover of Property of the Debtor's Estate**

32. Lastly, the Trustee has been advised that each of the Debtor's 180 employees have a laptop in his/her possession. As set forth above most of these laptops contain CUI, which is

---

[2] Cyber Health was the Debtor's cyber security provider prior to the bankruptcy proceeding, and has been instrumental in preserving these records.

8

regulated and restricted by the Department of Defense when it comes to the dissemination and destruction of CUI.

33. The Trustee, with the assistance of the former employees, has the list of all the employees and their respective contact information. To ensure that this information is not disseminated incorrectly, the Trustee respectfully requests that the Court enter an Order directing the turnover of any and all laptops in the possession, custody or control of former employees and/or any third-party.

## RELIEF REQUESTED AND BASIS FOR RELIEF

34. By the Motion the Trustee seeks the entry of an Order, pursuant to Bankruptcy Code sections 105(a), 541, 542 and 721: i) authorizing the Trustee to hire the Debtor's former employees as independent contractors of the Estate; ii) authorizing the Trustee to hire any other former employee solely in the capacity as an independent contractor as the Trustee deems necessary to effectuate the wind down; iii) allowing the Trustee to keep the Debtor's Operating Account at Truist open for an interim period of time with the Trustee maintaining control over the account; iv) authorizing the Trustee to secure and preserve the Debtor's electronic books and record, and to pay the related expenses as required; and v) directing the immediate turnover of any and all the Debtor's laptops in the possession, custody or control of any former employee and/or third-party.

**A.    Bankruptcy Code Section 721**

35. Pursuant to Bankruptcy Code section 721, the Court "may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. § 721. Pursuant to

Bankruptcy Code section 105(a), the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

36. A line of well-established cases supports the relief requested herein. See, e.g., Miltenberger v. Logansport Ry., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945) (Second Circuit extends doctrine for payment of prepetition claims beyond railroad reorganization cases); B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.), 713 F.2d 534 (9th Cir. 1983); Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to debtors' continued operation); In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989).

37. The Trustee submits that it is in the best interest of the Estate for the Trustee to operate the Debtor's business, on a limited basis, and to hire the Debtor's former employees solely in the capacity as independent contractors to assist with the collection of the accounts receivable and other related tasks pertinent to a wind down of the Debtor's operations. Indeed, the quicker the Trustee begins to review the existing contracts and collect these accounts receivable the more effective his efforts will be. Conversely, the longer these accounts receivables go uncollected the less likely the Trustee will be able to monetize them.

38. To that end, the Trustee also seeks authority to keep the Debtor's Operating Account at Truist open for an interim period of time with the Trustee as signatory with the authority to sweep any funds into the Estate account while pending accounts receivable are being paid into the Operating Account to ensure none of them get rejected from the account being closed.

39. Moreover, the Trustee has an obligation to secure and preserve the Debtor's books and records. In this instance, almost of the Debtor's books and records, including its financial records and all of its electronic mail, are stored electronically on multiple platforms. The Trustee respectfully requests an Order from the Court authorizing him to enter into a contract with i) Deltek to access to the Debtor's financial records for an interim period to, among other things, collect the outstanding accounts receivable, and ii) Cyber Health to ensure the safe transition and maintenance of the Debtor's other electronic records, including, but not limited to, historic financial records, the Debtor's electronic mail and employee records.

40. Accordingly, it is in the best interest of the Estate and its creditors that the Trustee be granted authorization to operate the Debtor's business solely to wind down the Debtor's operations and pay the necessary expenses related thereto, including, but not limited to, payments to the former employees and the fees related to the preservation of the Debtor's records.

41. For these reasons, the Trustee respectfully submits that the Court authorize him to operate the Debtor's business and pay certain necessary expenses on an interim basis, *nunc pro tunc,* to February 2, 2022 through and including May 2, 2022, without prejudice to seek further extensions of such authority.

B. **Bankruptcy Code Sections 541 and 542**

42. Under Bankruptcy Code section 542(a), a person "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of

this title, . . ., shall deliver to the trustee, . . ., such property . . ..” 11 U.S.C. § 542(a). Thus, "[t]o the extent that the debtor fails to surrender property, the trustee may move under 11 U.S.C. § 542(a) to compel a turnover of that property to the estate." In re Burgio, 441 B.R. 218, 220 (Bankr. W.D.N.Y. 2010); see Savage & Assocs., P.C. v. Mandle (In re Teligent, Inc.), 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) ("Under § 542 (a), the trustee may compel the turnover of property of the estate that the trustee can use, sell or lease."); In re Neuman, 75 B.R. 966, 968 (Bankr. S.D.N.Y. 1987) ("A Chapter 11 trustee may use Code § 542(a) to secure turnover of property of the estate from an entity in possession, custody or control. Entity, a defined term, includes a debtor." (citation omitted)), aff'd, 88 B.R. 31 (S.D.N.Y. 1988); see, e.g., In re Schick, 215 B.R. at 12 (directing debtor to turn over certain computer and information to Chapter 11 trustee).

43.   The employees' laptops and other related equipment are unquestionably property of the Estate under Bankruptcy Code section 541(a). See 11 U.S.C. § 541(a)(1) (defining property of the estate to include, among other things, "all legal and equitable interests of the debtor in property as of commencement of the case"). Further, Bankruptcy Code section 542(a) provides for the authority of the Court to order a turnover of property of the estate to the Trustee. 11 U.S.C. section 542(a); In re Block 1524 Constr. Corp., 75 B.R. 276, 278 (Bankr. E.D.N.Y. 1987).

44.   As set forth above, some, or most, of the Debtor's laptops contained CUI, which must be disposed of in accordance with the Department of Defense guidelines. Accordingly, the Trustee seeks the entry of an Order directing the immediate turnover of any and all the Debtor's laptops in the possession, custody or control of any former employee and/or third-party.

## **NOTICE AND NO PRIOR REQUEST**

45. By separate application filed contemporaneously herewith under Local Rule 9077, the Trustee will seek the entry of an Order scheduling a hearing on shortened and limited notice of this Motion.

46. No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: February 11, 2022
      Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Proposed Counsel to Salvatore LaMonica, as
Chapter 7 Trustee

By: *s/ Jacqulyn S. Loftin*
Jacqulyn S. Loftin, Esq.
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: 516.826.6500