K&L Gates LLP
*Counsel to Vigor Works LLC*
599 Lexington Avenue
New York New York
Telephone: 212-536-3900
Robert T. Honeywell, Esq.
Michael J. Gearin, Esq. (*Pro Hac Vice*)
Brandy A. Sargent, Esq. (*Pro Hac Vice*)

Hearing Date: August 13, 2024 at 10:00 a.m. ET
Objection Deadline: August 6, 2024 by 5:00 p.m. ET

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

BMT DESIGNERS & PLANNERS INC.,

                       Debtor.
-------------------------------------------------------------------x

Case No. 22-10123-MG
Chapter 7

## DECLARATION OF JOSEPH DAYTON IN SUPPORT OF RESPONSE OF VIGOR WORKS LLC IN SUPPORT OF TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND VIGOR WORKS LLC RESOLVING ALL CLAIMS RELATED TO THE MANEUVER SUPPORT VESSEL (LIGHT) PROGRAM

I, Joseph Dayton, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am the Controls and Engineering Director, Fabrication, at Vigor Works LLC ("Vigor"). I am more than 18 years of age and I am competent in all ways to testify in this matter.

2. I make this declaration in support of Vigor's response (the "Response") in support of the *Motion Pursuant to 11 U.S.C. §§ 105, 362, 363 and 365 and Bankruptcy Rules 4001, 6004, 6006 and 9019 to: (I) Approve the Settlement Agreement by and between the Trustee and Vigor Works LLC Resolving All Claims between the Parties Related to the Maneuver Support Vessel (Light) Program; and (II) Granting Related Relief* (the "Motion"),[1] filed by Salvatore LaMonica, Chapter 7 Trustee (the "Trustee") of the estate of BMT Designers & Planners Inc. (the "Debtor").

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion and, where not defined in the Motion, the Settlement Agreement.

3. The Motion seeks entry of an order approving the settlement agreement (the "Settlement Agreement") between the Trustee and Vigor (together, the "Parties") resolving all claims between the Parties relating to the Maneuver Support Vessel (Light) ("MSV(L)") program and related contractual services rendered prior to the bankruptcy filing. A copy of the Settlement Agreement is annexed to the Motion.

4. Unless otherwise stated herein, I make the following statements based upon my personal knowledge.

**Background**

5. The Debtor was a subcontractor to Vigor in connection with contract W56HZV-17-D-0086 (the "Contract"), which was awarded to Vigor on September 28, 2017 by the United States Army (the "Army") for the fabrication of the MSV(L), a new generation of ocean landing craft (the "Project"), pursuant to a Master Subcontract Agreement (MSV(L)) effective as of September 28, 2017 ("BMT/Vigor Subcontract"). A redacted copy of the BMT/Vigor Subcontract is submitted herewith as Exhibit VW 1.

6. Pursuant to the BMT/Vigor Subcontract, Vigor engaged the Debtor to perform certain project management, design, integrated logistics support and other work required under the Contract.

7. The Debtor and Vigor are also parties to a License Agreement, dated as of September 28, 2017 ("License Agreement"), pursuant to which the Debtor granted Vigor a perpetual, irrevocable, exclusive, worldwide license for the use of certain "Project IP," including "BMT Hull Forms," and grants Vigor the right to sublicense and enforce Vigor's rights against third parties. The License Agreement is submitted herewith as Exhibit VW 2. Vigor has paid the Debtor ninety percent (90%) of the $2,600,000 royalty due under the License Agreement for the Prototype MSV(L) vessel. The remaining royalty for the Prototype is not yet due.

2

8. To secure prompt payment and performance of all of the Debtor's obligations under the License Agreement and each subcontract, the Debtor granted Vigor a security interest in all Deliverables (including all Project IP) and products and proceeds of the same. Vigor timely filed and continued a UCC-1 Financing Statement perfecting its security interest. Copies of such filings are submitted herewith as <u>Exhibit VW 3</u>.

9. In order to facilitate the Debtor's performance under both the BMT/Vigor Subcontract as well as the License Agreement, the Debtor, BMT Nigel Gee Limited (now known as BMT UK Limited) and BMT Defence Services Limited (now known as BMT Limited) executed the Intra-Group Licence Agreement, dated as of September 28, 2017 (the "<u>BMT Intra-Group License</u>"),[2] the same date as the BMT/Vigor Subcontract and the License Agreement. The BMT Intra-Group License states that its purpose was to provide BMT with the necessary intellectual property rights to grant to Vigor under the License Agreement (and allow BMT to comply with its obligations thereunder), and further provides that Vigor is a third party beneficiary of the BMT Intra-Group License to the extent required to enforce its rights under the License Agreement. That is my understanding of the purpose of the BMT Intra-Group License as well: that it was a separate intellectual property license that allowed the Debtor to enter its separate intellectual property license with Vigor, namely the License Agreement.

10. In connection with the License Agreement, BMT Intra-Group License, and BMT/Vigor Subcontract, BMT Group Ltd, the ultimate parent of the Debtor, BMT UK Limited, and BMT Limited, provided Vigor with a Letter of Comfort (the "<u>Comfort Letter</u>"). The Comfort Letter is submitted herewith as <u>Exhibit VW 4</u>.

---

[2] I have reviewed the copy of the BMT Intra-Group License attached as Exhibit A to the *Response to Motion to Approve the Settlement Agreement by and between the Chapter 7 Trustee and Vigor Works LLC*, filed herein by BMT UK Limited and BMT Limited on June 25, 2024 [ECF No. 257].

11. The Debtor itself entered into a number of subcontracts with service providers to obtain goods and services necessary for the Debtor to perform its obligations under the BMT/Vigor Subcontract, including subcontracts with BMT UK Limited and BMT Limited (together the "Affiliates"). Each of the subcontracts with such Affiliates explicitly incorporates the BMT Intra-Group License as follows:

> A. The Standard Terms, the Flow Down Clauses, the Intra-Group License and (to the extent applicable to the Work to be performed by Subcontractor under this Subcontract Agreement as incorporated herein) the MSA and Prime Contract, are incorporated in and form a part of this Subcontract Agreement (MSV-(L)) (this "*Subcontract*"), and all references to the "**Contract Documents**" include, to the extent applicable, each of those documents.

12. From the beginning of the BMT/Vigor Subcontract, the Debtor struggled to comply with the schedule for the Project and submit required deliverables in a timely manner. During the initial preliminary design phase of the Project in the spring of 2018, the Debtor's deliverables did not satisfy required Army standards, which caused delays in the progress of the Project. Vigor spent significant time during the spring and summer of 2018 correcting the Debtor's work and supervising and meeting with the Debtor to try to keep the Project on track.

13. During the critical design review phase of the Project in late 2018 and early 2019, the Debtor failed to submit the required documents to the American Bureau of Shipping ("ABS") in conformance with ABS industry standards and Contract specifications. This again caused delay, as it resulted in repeated rounds of submissions to remedy prior nonconformities.

14. Ultimately, the defects and delays with the Debtor's performance under the BMT/Vigor Subcontract caused the design phase of the Project to be delayed by more than one year.

15. Eventually, in December 2019, construction on the MSV(L) began. Unfortunately, the Debtor's deliverables during construction of the MSV(L) continued to be delayed, and the Army was frequently dissatisfied with the substance of the Debtor's deliverables. The Debtor

ultimately never completed certain aspects of the BMT/Vigor Subcontract, which Vigor is now completing at its own cost and expense.

16. The Debtor's delays also caused corresponding delays to the work being performed by other subcontractors, who claimed to experience significant cost increases as a result of the Debtor's performance issues.

17. By the end of March 2021, due to the Debtor's delays and inadequate performance Vigor declined to award additional Project work to the Debtor. Vigor and the Debtor exchanged letters regarding the scope of future contract performance throughout the summer of 2021, and ultimately moved to in-person meetings with senior leadership in September 2021, but the parties were unable to reach an agreement.

18. The Debtor filed this bankruptcy proceeding on February 1, 2022.

19. Vigor has claims against the Debtor in an amount in excess of $19,867,314.35 stemming from out-of-pocket costs Vigor has and will incur as a result of the Debtor's breaches under the BMT/Vigor Subcontract, as detailed below:

(i) Vigor was forced to complete the Debtor's scope of work under the Project. To do so, Vigor formally assumed some of the Debtor's subcontracts by way of motions filed in the bankruptcy case and entered into new subcontracts and purchase orders with suppliers. This caused Vigor to incur hard costs, which totaled close to $4 million as of September 21, 2023.

(ii) Vigor has incurred costs to complete the Debtor's responsibilities relating to the Project, including finalizing the technical data package, updating and resubmitting ABS class drawings and calculations, engineering manufacturing and design, and testing, which costs Vigor estimated to total roughly $5 million as of September 21, 2023.

(iii) Vigor has expended costs to remedy and compensate for the Debtor's defaults under the BMT/Vigor Subcontract, such as overtime pay, correcting errors, reworking subcontracts, and addressing issues with the Debtor's subcontractors. Vigor estimated these costs to be in excess of $11 million as of September 21, 2023.

5

20. The total value the Debtor could have earned under the BMT/Vigor Subcontract for the design phase of the MSV(L) Project is $36,972,107.59, of which Vigor actually paid the Debtor $32,503,408.50, which leaves a delta of $4,468,699.09 in possible remaining value. Vigor also received a $1,000,000 payment on a bank guaranty of performance, less certain costs associated with recovery of the payment.

21. Assuming the Debtor was entitled to a credit for the remainder of the BMT/Vigor Subcontract value ($4,468,699.09) (including any royalties under the License Agreement), which Vigor disputes, as well as the bank guaranty, Vigor's claim against the Debtor still exceeds $14,398,615.26.

22. As the holder of a claim in an amount in excess of $14,398,615.26, I understand that Vigor is the largest creditor of the Debtor's estate.

23. The Trustee, on behalf of the Debtor's estate, asserted a right to additional compensation from Vigor based on services provided under the BMT/Vigor Subcontract, as well as royalties alleged to have accrued under the License Agreement. The Trustee further asserted that the Debtor held rights to seek equitable adjustment of compensation from the Army for services provided under the MSV(L) Project, as well as administrative costs incurred by the Debtor's estate for the services rendered to Vigor during the post-petition period. In this regard, the Trustee asserted that the estate had multiple claims against Vigor arising under the operative documents, and for breach of contract under the BMT/Vigor Subcontract. The Trustee asserted claims in the millions of dollars against Vigor. Vigor disputes all of the Trustee's and the Debtor's claims and maintains that the vast majority of the Trustee's claims were barred by damages limitations clauses in the BMT/Vigor Subcontract.

24. Among other things, Vigor asserts that any and all of the Trustee's possible counterclaims were either waived by the Debtor pursuant to a Request for Payment with Waiver and Release that the Debtor executed on February 19, 2021 (the "Release"), or seek payment for work that the Debtor never actually performed. The Release is a standard industry form that was part of the invoicing and payment process under the BMT/Vigor Subcontract. Such forms and releases are standard in the industry to ensure that any and all claims of subcontractors are timely brought to the attention of the prime contractor.

25. The Parties first engaged in informal discovery and negotiations in an effort to resolve the dispute, but it became clear to the Parties that, given the complexity of the issues, they would need the assistance of an experienced mediator to reach a resolution.

26. On request of the Parties, on June 21, 2023, the Court referred the disputes between the Parties to mediation.

27. In October 2023, the Parties participated in a full day mediation that was conducted by the Hon. Robert E. Gerber (Ret.) (the "Mediator"). I personally attended the mediation. As a result of efforts by the Mediator and the Parties, a settlement was reached. The settlement was negotiated in good faith and at arm's length with both Parties represented by experienced counsel. Thereafter, the Parties spent several weeks finalizing the settlement terms, and ultimately executed a term sheet on October 23, 2023.

28. Following execution of the term sheet, the Parties began drafting the Settlement Agreement.

29. Between October 2023 and May 2024, the Parties heavily negotiated and exchanged numerous drafts of the Settlement Agreement.

30. On May 1, 2024, the Parties finalized and executed the Settlement Agreement.

**The Settlement Agreement**

31.     The Settlement Agreement, among other things, resolves all obligations of Vigor and the Debtor arising under or relating to the BMT/Vigor Subcontract and/or the License Agreement, as well as all obligations relating to any royalty payment or right of first refusal provisions arising at any time under the Parties' agreements (collectively, "Royalty Obligations"), and resolves, satisfies and discharges all claims between Vigor and the Debtor' estate.

32.     Under the Settlement Agreement, Vigor will pay the settlement sum of $2,200,000 to the Debtor's estate, without reduction or offset, as consideration for the purchase of the Acquired Assets listed therein free and clear of all liens, claims and interests, the assignment of the Assigned Contracts and Licenses, the assignment of the Assigned Insurance Rights, and the full satisfaction and discharge of the Royalty Obligations and any obligations of Vigor under the BMT/Vigor Subcontract and/or the License Agreement.

33.     The BMT/Vigor Subcontract, License Agreement, and related contracts and disputes are extremely complicated and complex, as demonstrated by the years-long negotiations, litigation and mediation that preceded the Settlement Agreement.

34.     In my experience, litigating these types of contracts and disputes requires extensive amounts of discovery, the use of experts, time and resources. I believe that it would be extremely expensive to continue to litigate the disputes.

35.     The Settlement Agreement achieves finality and brings an end to a continuing drain on both Parties' resources brought about by litigation, while at the same time providing a net benefit to the Debtor's estate. If the Settlement Agreement is not approved, instead of realizing funds for the Debtor's estate, the Debtor's estate will face continued protracted and expensive litigation, at best, and a claim in excess of $14 million, at worst.

**Good Faith of Vigor**

36. In the Motion, the Trustee has requested that the Court approve the Settlement Agreement and, *inter alia*, find that Vigor acted in good faith, without collusion, and from an arm's length bargaining position, and further, that Vigor is a good faith purchaser entitled to the protections afforded under 11 U.S.C. § 363(m).

37. Since the very early stages of the bankruptcy case, Vigor and the Trustee, through their respective representatives and professionals, engaged in protracted and difficult negotiations regarding the issues that are the subject of the Settlement Agreement that were conducted in good faith and at arm's length. These efforts ultimately culminated in the Parties' entry into the Settlement Agreement.

38. Vigor participated in the negotiations and drafting of the Settlement Agreement without fraud, collusion or other misconduct, and has not acted for any improper purpose, such as to hinder, delay, or defraud creditors.

39. Vigor has not engaged in any collusion with any other party that has expressed interest in the assets that are the subject of the Settlement Agreement.

40. From Vigor's perspective, it is providing more than $16.5 million in consideration in the form of cash and claims releases to the estate in connection with this settlement. The Parties have not, and will not, exchange any consideration other than as set forth in the Settlement Agreement, which consideration represents fair and reasonable value.

41. Vigor has no connection to the Trustee or the Debtor and is not an insider.

42. Under the Settlement Agreement, Vigor will pay the settlement sum of $2,200,000 for the purchase of the Acquired Assets free and clear of all liens, claims and interests, the assignment of the Assigned Contracts and Licenses, the assignment of the Assigned Insurance Rights, and the full satisfaction and discharge of the Royalty Obligations and any obligations of

Vigor under the BMT/Vigor Subcontract and/or the License Agreement. The retirement of the Royalty Obligations is an essential term of the settlement and Vigor's willingness to enter into the settlement was predicated on the full satisfaction of the Royalty Obligations. Vigor is not willing to go forward with the settlement unless it is clear that the Royalty Obligations are fully satisfied through the substantial contributions that Vigor is making. Vigor has irrevocable rights under the License Agreement and the BMT/Vigor Subcontract and third-party beneficiary rights under the BMT Intra-Group License that it intends to rely on following the approval of the settlement and the settlement approval should not qualify or limit those rights in any way.

43. In particular, Vigor views all of its intellectual property rights under the License Agreement as granted irrevocably by its express terms, and does not view the BMT Intra-Group License as giving any rights to the licensors thereunder (BMT UK Limited and BMT Limited) to qualify or limit Vigor's its perpetual, irrevocable, exclusive, worldwide license to use the BMT Hull Forms and other Project IP. While Vigor was (and is) named a third-party beneficiary of the BMT Intra-Group License, neither of the licensors thereunder (BMT UK Limited and BMT Limited) is named as a third-party beneficiary of the License Agreement; and the only named third-party beneficiary of the License Agreement is the Government (as defined therein), under Section 21 thereof. Vigor is expressly conditioning its entry into this settlement on this understanding of its rights going forward.

44. From Vigor's perspective, it is contributing more than fair value to this settlement. Vigor believes that the Settlement is fair and reasonable. Vigor respectfully requests that the Court grant the Trustee's Motion and approve the Settlement, and deny any request by BMT UK Limited and BMT Limited for language in the Court's approval order that expands their rights beyond those currently provided under the BMT Intra-Group License.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This the 6th day of August, 2024.

/s/ *Joseph T. Dayton*
Joseph Dayton

507815665.5